OPINION OF THE COURT
Philip S. Straniere, J.
Petitioner, Mariners Residence Inc., commenced this special proceeding pursuant to Social Services Law article 7, title 2 against respondent, Adrienne Arnold, alleging respondent remained in possession of her living quarters after having had her occupancy terminated for nonpayment of monthly fees. The matter was originally calendared for January 19, 2016. It was adjourned until February 5, 2016. Apparently the respondent neither appeared nor answered and the matter was set for inquest on February 19, 2016.
There is a letter in the file from the respondent dated February 2, 2016 stating she would not be appearing on February 5, 2016 because of her perceived bias of the Housing Part judges and the guardian ad litem (GAL) assigned to her, although there is no showing that a GAL appeared for her in this proceeding.
*787 A search of the court records reveals that there was a prior proceeding between petitioner and respondent (L&T index No. 51492/15), in which a GAL was appointed for respondent. The matter was resolved by a stipulation of settlement and the litigation was subsequently discontinued by petitioner. Respondent filed several appeals to the Appellate Term in regard to this proceeding. All the appeals were denied by an order dated December 3, 2015 (2015 NY Slip Op 93156[U] [2015]).
Issues Presented
A. Is the proceeding properly in the Housing Part?
Social Services Law § 461-h sets forth the procedure to be followed by an adult home in order to terminate an admission agreement with a resident. The home operator is directed to commence a “special proceeding ... in the county court, the justice court of the village, the town justice court, the court of civil jurisdiction in a city, or the district court which has jurisdiction over proceedings brought pursuant to article seven of the real property actions and proceedings law.” (Social Services Law § 461-h [1] [a].)
Although the Civil Court of the City of New York is not specifically mentioned, a legislative slight which probably should be remedied, it is the court of civil jurisdiction in a city—albeit New York City, the “city” which just happens to be the most populous in the country—the Civil Court would have jurisdiction.
A special proceeding is governed by article 4 of the Civil Practice Law and Rules while a summary proceeding is a special proceeding brought pursuant to the Real Property Actions and Proceedings Law.
The next question is whether the proceeding is properly placed in the Housing Part of the Civil Court. The jurisdiction of the Housing Part is set forth in New York City Civil Court Act § 110. New York City Civil Court Act § 110 (a) (5) gives the judges of the Housing Part the authority over “all summary proceedings to recover possession of residential premises to remove tenants therefrom, and to render judgment for rent due.” Summary proceedings to recover the possession of real property are also designated “special proceedings” but the procedures are set forth in RPAPL article 7. A review of RPAPL 711 and 713 does not designate residents of adult homes as either tenants or licensees.
However RPAPL 713-a addresses the issue and specifically provides:
*788 “A special proceeding to terminate the admission agreement of a resident of an adult home or residence for adults and discharge a resident therefrom may be maintained in a court of competent jurisdiction pursuant to the provisions of section four hundred sixty-one-h of the social services law and nothing contained in such section shall be construed to create a relationship of landlord and tenant between the operator of an adult home or residence for adults and a resident thereof.”
Case law has consistently held that although the Civil Court has jurisdiction to determine the issue of termination of a resident from a Social Services Law facility the relationship is not one of a “landlord and tenant” and a summary proceeding under RPAPL article 7 does not lie (Surf Manor Home for Adults v Edelman, 20 Misc 3d 1115[A], 2008 NY Slip Op 51352[U] [2008]). As a result, the Housing Part lacks subject matter jurisdiction. As the court noted in Salvation Army v Alverson (157 Misc 2d 416, 420 [1992]):
“It is of no legal significance that this proceeding was assigned ‘L & T’ index numbers by the clerk’s office when filed, and thereafter calendared on the Part 18 residential landlord-tenant calendar. Although the subject accommodations are assuredly residential, this special proceeding is not a summary proceeding brought under the Real Property Actions and Proceedings Law. Rather, this special proceeding is authorized by Social Services Law article 7, which independently grants the Civil Court subject matter jurisdiction to entertain it . . . . It is therefore not within the subject matter of the Housing Court, and cannot be heard by a Housing Judge.”
The above being the case, petitioner is fortunate that on the return date, February 19, 2016, the Housing Part Judge was on vacation and no coverage was provided from outside Richmond County, so an elected Civil Court Judge heard the residential landlord-tenant calendar. This means that the court may address the merits of the case and not dismiss it on procedural grounds.
The clerk is ordered to transfer the proceeding to the regular civil part and assign a civil index number. All fees are waived.
*789 B. Were the notice provisions of the Social Services Law complied with?
Social Services Law § 461-g sets forth the procedure for terminating admission agreements at an adult home or residence for adults. Paragraph (2) (a) of that statute requires that the resident receive 30 days’ written notice on a form prescribed by the Department setting forth the reasons for the termination. A copy of the notice must also be sent to the resident’s next of kin and the person designated in the admission agreement as the responsible party. Social Services Law § 461-h is the statute which mandates that any court proceeding for termination be brought in a court of civil jurisdiction as a special proceeding. Paragraph (5) (a) also contains language requiring notice not only to the resident, but to the next of kin and the person designated in the admission agreement as the responsible party.
Petitioner has produced a copy of the admission agreement dated August 4, 2014. That document does not list either a next of kin or a person designated as the responsible party. However, because the statute requires notice to both of those individuals if there be any, the petition must recite that there is no such person if none has been designated. The petition does not contain any allegation in that regard. In order to ensure that the statute has been complied with either proof of service on the next of kin or designated representative must be submitted or an affirmative statement must be in the pleading that there is none. Otherwise the court cannot determine if the petitioner has complied with the statutory notice requirement.
The petition is defective. It is essential that a petition in a special proceeding under Social Services Law article 7 contain an allegation that notice was given to the next of kin or the designated responsible party or that no such individual exists. The petition lacks such allegation and therefore must be rejected.
C. Was the respondent given useful information about available advocacy assistance?
There is another problem with the proceeding. The statute requires that the 30-day termination notice also contain a “list of free legal services agencies within the facility’s geographical area and a list of other available community resources which provide resident advocacy services” (Social Services Law § 461-g [2] [a] [iii]). The list attached by petitioner to the 30-day notice is not current.
*790 The only Staten Island agency listed is The Legal Aid Society. Unfortunately the information is not correct. It lists the address as 42 Richmond Terrace rather than its current address of 60 Bay Street which has been its location for several years. It has the telephone number as “212-273-6677” rather than “718-273-6677.” The “718” area code was assigned to Staten Island in 1984. This makes the notice entirely useless as the information is a “tad” out of date. It calls into question all of the other information about advocacy groups available to residents.
As a result, the statutory notice being provided by petitioner fails to give any meaningful information to an adult resident who finds himself or herself in jeopardy of being evicted from an adult residence and therefore is not in compliance with the statute. This failure of the petitioner is most troubling in that the persons needing this information for the most part are senior citizens or persons with disabilities who cannot on their own locate adequate legal assistance. The court must ask whether there have been incidents over the years where persons who had viable defenses to being terminated were left remediless because of petitioner’s failure to provide current information in violation of the statute.
D. What is the monthly rate?
There is another defect in the pleading. The petitioner alleges that the rate is $1,234 a month. This contradicts the terms of the admission agreement which fixed the monthly charge at $1,225. Petitioner needed to provide evidence that the rate had been increased and that the increase was done in the manner set forth in the agreement or with the statute. Petitioner has not produced any such documentation.
The 30-day notice alleges the respondent failed to pay the September 2015 and October 2015 monthly charges. The petition alleges that the September 2015 and December 2015 payments were not made. Is this a typographical error or was a payment made and applied to the October charges? The admission agreement requires the petitioner, as the operator, to provide the resident with a final written statement of the resident’s account upon “termination of this agreement.” Because the petitioner has terminated the agreement, a copy of the account should have been provided to the respondent with the termination notice and submitted as an exhibit in this proceeding.
*791 E. Inadequacy of the Operating Certificate
Petitioner has submitted a copy the operator’s certificate for this facility issued to it by the New York State Department of Health. It is dated November 27, 2015. It is effective as of December 1, 2015 and expires on November 30, 2019. Because the allegations of the complaint arose prior to the effective date of the operating certificate, petitioner needs to produce the operating certificate covering the time when the alleged incidents arose to establish it has standing to commence this action.
Conclusion
For the above reasons the petition is dismissed.